UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JOSHUA T. HAYNES,<br><br>Defendant. | CASE NO. 2:21-CR-114<br><br>JUDGE SARAH D. MORRISON |

**SENTENCING MEMORANDUM OF THE UNITED STATES**

The United States submits its Sentencing Memorandum regarding Defendant Joshua T. Haynes, whose sentencing is set for January 21, 2022, at 11:00 a.m. For the reasons below, the United States recommends that the Court impose a term of incarceration at the low end of the Guidelines range of 121–151 months, followed by five years of supervised release.

### I. BACKGROUND

In June of 2019, law enforcement agents conducted an investigation into potential violations of federal law concerning child-exploitation violations involving the Defendant, Joshua T. Haynes. Following the investigation, on April 12, 2021, the Defendant was charged via criminal complaint with the distribution and possession of child pornography, in violation of 18 U.S.C. § 2252(a) and 18 U.S.C. § 2252A(a). On June 21, 2021, a one-count information, as well as a corresponding plea agreement, were then filed regarding this case. The Defendant was charged in Count 1 with possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B) and (b)(2). (Doc. # 17.) On July 21, 2021, the Defendant pled guilty to Count 1. This matter is now set for a sentencing hearing on January 21, 2022, at 11:00 a.m.

## II. GUIDELINES RANGE/PRESENTENCE INVESTIGATION REPORT

The Probation Officer issued a final Presentence Report (PSR) on October 5, 2021. According to the PSR, the total offense level (TOL) is 30, which included the following:

- Base offense level: 18 (U.S.S.G. § 2G2.2(a)(1));
- Material involved prepubescent minors: +2 (U.S.S.G. § 2G2.2(b)(2));
- Defendant engaged in distribution: +2 (U.S.S.G. § 2G2.2(b)(3));
- Material depicts exploitation of an infant or toddler: +4 (U.S.S.G. § 2G2.2(b)(4));
- Use of a computer: +2 (U.S.S.G. § 2G2.2(b)(6));
- 600 or more images: +5 (U.S.S.G. § 2G2.2(b)(7)(D)); and
- Less 3 points for acceptance of responsibility (U.S.S.G. § 3E1.1(b)).

The PSR further calculated the defendant's Criminal History (CH) Category as a III, with a resulting range of 121–151 months. (PSR ¶ 89.) The Probation Officer did not identify any factors warranting departure from the guidelines range. (*Id.* ¶¶ 104.)

The Defendant objects to the 5-point number-of-images enhancement assessed to the Defendant pursuant to U.S.S.G. § 2G2.2(b)(7)(D), given that the Defendant had 600 or more images related to child exploitation. (PSR ¶¶ 41–42.) By way of relevant background, Application Note 6(B)(ii), which applies to U.S.S.G. § 2G2.2(b)(7) and its subparts, states that "[e]ach video, video-clip, movie, or similar visual depiction shall be considered to have 75 images." Here, the Defendant was found to have at least 7 images and 38 videos that depicted child pornography. Applying the 75-image multiplier to the videos here and then adding it to the 7 images amounted to the PSR's finding that the Defendant had 2,857 images depicting child pornography. The Defendant objects to the enhancement, contending that Application Note 6(B)(ii) is an improper expansion of the Guidelines, rather than a mere interpretation of the Guidelines' text.

Contrary to the Defendant's objection, the 5-point enhancement was properly applied. First, the 75-image multiplier comports with Sixth Circuit and Supreme Court case law because it

2

serves as commentary interpreting an ambiguous Guideline term. Under the guiding law, Guideline commentary is permissible if "it serves only to *interpret* the Guidelines' text, not to replace or modify it." *United States v. Havis*, 927 F.3d 382, 386 (6th Cir. 2019) (citing *Stinson v. United States*, 508 U.S. 36, 44–46 (1993)). In *United States v. Geerken*, 506 F.3d 461, 465 (6th Cir. 2007), the defendant received an enhancement based upon the 75-image multiplier when he was sentenced in 2006 for a crime he committed in 2003. The term "images" was not defined under the 2003 Guidelines; but a 2004 amendment to the Guidelines included the 75-image multiplier, which the district court applied in calculating the number of images the defendant possessed. *Id.* The defendant contended that the 75-image multiplier was a substantive change to the Guidelines, and thus could not be applied retroactively. The Court disagreed, and explained that the multiplier was simply a *clarifying* addition the Guidelines—to provide guidance on how to interpret an ambiguous term ("images") in the Guidelines:

> When the Sentencing Commission amended the Guidelines in 2004, adding—through an application note included in the commentary to U.S S.G. § 2G2.2—not only a definition for the term "images" but also a conversion factor applicable to video materials, it explained that the amendment was intended "to provide greater *guidance* for these terms" and "an *instruction* regarding how to apply the specific offense characteristic to videotapes." U.S. Sentencing Guidelines Manual supp. to app. C, amend. 664 at 59 (emphasis added). By using the terms "guidance" and "instruction," the Sentencing Commission suggested that it was merely trying to clarify the ambiguity that appeared in the existing Guidelines.

*Id.* at 466. Subsequent Sixth Circuit case law on this issue further reinforces the Government's point: the commentary on the 75-image enhancement provides interpretive guidance to an ambiguous section of the Guidelines rather than an arbitrary contradiction of the language. *See United States v. Lynde*, 926 F.3d 275, 280 (6th Cir. 2019) (in response to the defendant's argument that the commentary arbitrarily treats video clips as "75 images," the Court responded that "one

3

could reasonably decide 'that videos and movies' cause more harm and so 'should be weighed much more heavily than photos or pictures.'" (quoting *United States v. Hanson*, 693 Fed. App'x 521, 523 (9th Cir. 2017))).

Second, the defendant's citation to *United States v. Havis* fortifies the Government's position. *Havis* addressed a Guideline section that is fundamentally different from the one at issue here. In *Havis*, the Sixth Circuit observed that the term "controlled substance offense" was defined in guideline § 4B1.2, and that the definition did not include a provision for attempts. The commentary, however, further defined "controlled substance offense" to include attempts. The Court held that the commentary's inclusion of an attempt crime in the definition of a controlled substance offense was contrary to the guideline provision because "no term in § 4B1.2(b) would bear that construction."[1]

Here, there is little question that the guideline provision "will bear the construction" given in the amended commentary. Again, case law already confirms that the term "images" as it's used in U.S.S.G. § 2G2.2(b)(7) is ambiguous, and that applying more images to a movie would be a reasonable way to understand the meaning of the provision. *See, e.g.*, *Geerken*, 506 F.3d at 466; *see also Lynde*, 926 F.3d at 280. This alone makes this case distinguishable from *Havis*, where the panel viewed the Guideline commentary as effectively adding offenses that were not listed in the guideline text. The commentary here merely interprets a term in the existing text of the Guideline.

---

[1] *Havis* did not change the law established by the Supreme Court and repeatedly confirmed by lower courts that guideline "commentary is binding on the federal courts." *Stinson v. United States*, 508 U.S. 36, 46 (1993). As the Supreme Court explained, "although amendments to guidelines provisions are one method of incorporating revisions, another method open to the Commission is amendment of the commentary, if the guideline which the commentary interprets will bear the construction." *Id.* As long as that is so, "prior judicial constructions of a particular guideline cannot prevent the Commission from adopting a conflicting interpretation" via commentary. *Id.*

The actual language of the provision at issue is further distinguishable from *Havis*. Whereas the language in *Havis* did not include a term that could bear the addition of "attempt," the language of § 2G2.2(b)(7) does bear the interpretation the commentary imposes. That is, the ratio of 75 still images for every 1 video image reflects the reality that films and videos are a progression of *still images* displayed fast enough that the human eye perceives the image as naturally moving. "Frame rate" is the expression of how many images per second are displayed to create the sense of natural movement. Films record movement at a rate of 24 "frames" or "still images" per second, which has been the industry standard practice since 1926. *See In re Beatty*, 94 F.2d 1006, 1008 (C.C.P.A. 1938). Digital video is displayed at a rate of 30 frames per second. *See Intel Corp. v. Broadcom Corp.*, 172 F.Supp.2d 515, 520–21 (Dist. Del. 2001). Accordingly, a four-second film will contain 96 still images and a three-second video will contain 90 still images. Here, a number of the videos were over 1 minute. At least three were more than 2 minutes. And at least two were over 4 minutes. As a matter of fact, these videos contained more than a single image—and in fact well more than 75 images. This reality further distinguishes the circumstances from those in *United States v. Riccardi*, 98 F.3d 476 (6th Cir. 2021), which the defendant also cites for support. *See* Obj. Ltr. at 2; *but see Riccardi*, 98 F.3d at 480 (explaining that it would be impermissible to apply a bright-line commentary rule even where—unlike here, and unlike in any case where there's a video that lasts more than a few seconds—the facts undermine the rule's application).

In short, consistent with *Havis* and *Stinson*, the commentary serves to interpret the Guidelines' text, not to replace or modify it. *See Stinson*, 508 U.S. at 44–46. Without question, the impact of moving images is far greater than still images and the 75:1 conversion ratio is not

5

unreasonable. *See Geerken*, 506 F.3d at 466. The enhancement at issue was thus properly applied.

### III. ANALYSIS AND RECOMMENDATION OF THE UNITED STATES

Sentencing requires a determination of the applicable guideline range, whether a departure is appropriate, and a consideration of the factors in 18 U.S.C. § 3553(a). *See Gall v. United States*, 552 U.S. 38, 49–50 (2007). Under this analysis, the Government submits for the following reasons that a term of incarceration at the low end of the Guidelines range, and a term of supervised release of five years, is fair.

The Government points to several aspects of this case that counsel in favor of an in-Guidelines sentence. The first is the subject matter. Without question, the nature of the material the Defendant possessed is heinous. As the PSR details, the Defendant possessed images and videos of sexual abuse of toddlers, and images of graphic, violative rape of kids as young (or younger than) five or six. (*See, e.g.*, PSR ¶ 36.) A common refrain to facts like these is that the Defendant himself didn't actually engage in any of the abuse. That's true but it's beside the point in cases like this one. The children in these images and videos will have to live for the rest of their lives with the ill effects of the awful abuse to which they were subjected. They suffer every day, and the world is worse for it. The Defendant enjoyed the abuse and was part of creating a market for the abuse and the enjoyment of the abuse, and his sentence should reflect as much.

Second, the nature and circumstances of some of the background facts also merit the Court's consideration. Specifically, this is not the Defendant's first time being caught with material like this. Haynes was the subject of investigation by different law enforcement agents in 2018, during which Haynes was shown to have distributed child pornography as far back as 2016. Despite having his phone seized in 2018, Haynes picked right back up with engaging in activities

related to the possession, receipt, and distribution of child pornography. In other words, this was no mistake, and Haynes' sentence should reflect that the Defendant's conduct in this case is part of a longer, broader pattern of conduct.

## IV. CONCLUSION

For these reasons, the Government submits that a term of incarceration at the low end of the advisory Guidelines range of 121–151 months, as well as a term of supervised release of five years, would be sufficient but not greater than necessary to further the ends of sentencing.

Respectfully submitted,

KENNETH L. PARKER
United States Attorney

*s/S. Courter Shimeall*
S. COURTER SHIMEAL (0090514)
Assistant United States Attorney
303 Marconi Boulevard, Suite 200
Columbus, Ohio 43215
Office: (614) 469-5715
Fax: (614) 469-5653
E-mail: Courter.Shimeall@usdoj.gov

## **CERTIFICATE OF SERVICE**

      I hereby certify that a copy of the foregoing Sentencing Memorandum of the United States was served this 6th day of January, 2022, electronically upon all counsel of record for Defendant Joshua T. Haynes.

                                         *s/S. Courter Shimeall*
                                         S. COURTER SHIMEALL (0090514)
                                         Assistant United States Attorney